1
2
3
4
5
6
7
8                      IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10    GEORGE EDWARD COLES

11                  Petitioner,                No. CIV S-08-2134 LKK DAD P

12          vs.

13    D.K. SISTO, Warden,

14                  Respondents.               FINDINGS & RECOMMENDATIONS

15                                   /

16              Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17    corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered

18    against him in 2007 by the Sacramento County Superior Court on charges of first degree

19    burglary, receiving stolen property, being a convicted felon in possession of a firearm, unlawfully

20    possessing a switch-blade knife, and resisting a law enforcement officer.  He seeks federal habeas

21    relief on the following grounds: (1) the trial court erred in admitting hearsay testimony that

22    resulted in petitioner being denied his Sixth Amendment right to confrontation and his

23    Fourteenth Amendment rights to due process and a fair trial; (2) petitioner's trial attorney

24    rendered ineffective assistance; and (3) the sentence he received constitutes cruel and unusual

25    punishment.  Upon careful consideration of the record and the applicable law, the undersigned

26    will recommend that petitioner's application for habeas corpus relief be denied.

                                        1

FACTUAL BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> At about 9:00 a.m. on August 21, 2006, Michael Nicolaou heard his doorbell ring and his neighbor's dogs barking. He walked out of his house and saw Coles and Cathey, who are African-American, standing in his neighbor's driveway. Nicolaou asked, "Can I help you?" Cathey said they were looking for "Tiffany" to give them a ride to work, they had called Tiffany from a phone booth, and they were going to return to the phone booth and try again. Suspicious because he knew there were no phone booths in the area, Nicolaou called the sheriff's department and provided descriptions of Coles and Cathey and the clothing they were wearing.

> About 10:00 a.m. that morning, Nathan Schemel drove away from his residence and saw Coles and Cathey walking on the sidewalk in the direction of his home. At 10:45 a.m., in response to a call from the sheriff's department, he returned to his home where he saw Coles and Cathey being detained. Schemel's home had been broken into and ransacked.

> Deputies Claudio Sotelo and Peter Cress had responded to Nicolaou's report. Upon arriving at the location, they saw Cathey walking down the driveway of Schemel's residence. Because Cathey matched a description provided by Nicolaou, the deputies asked Cathey why he was there. Cathey said that he was alone in the neighborhood trying to find a woman who had offered him a lawn mowing job and that he was going house to house to locate her because she had not given him an address.

> Sotelo checked Schemel's house, found the door was unlocked, detained Cathey, and called for additional deputies. A person then drove up and told the deputies that he had seen a Black man running on a street directly north of Schemel's house. Sotelo directed Deputy Larry Canfield, a motorcycle officer, to try and locate the individual.

> As Canfield drove through the neighborhood, he saw Coles running across a street. Using his PA system, Canfield ordered Coles to get on the ground. Coles lay face down on the grass of a residence but kept reaching into his right front pocket pants pocket with his hand. Although Canfield told Coles to remove his hand from his pocket, he would not comply.

/////

2

1
2
3
4

> Canfield tried to get physical control of Coles; a struggle ensued and Coles tried to grab Canfield's weapon.  During the struggle, Canfield saw a butterfly knife fall from Coles's pants pocket.  With the help of a bystander, Canfield subdued Coles and put him in a patrol car.  A search of the area where the struggle occurred revealed a loaded .32 caliber semiautomatic firearm.  The firearm had been stolen six days earlier during a residential burglary.

5  Notice of Lodging Documents filed February 4, 2009 (Doc. No. 11), Resp't's Lod. Doc. 4

6  (hereinafter Opinion) at 2-4.)[1]

7                                                    ANALYSIS

8  I.  Standards of Review Applicable to Habeas Corpus Claims

9              An application for a writ of habeas corpus by a person in custody under a

10  judgment of a state court can be granted only for violations of the Constitution or laws of the

11  United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

12  interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct.

13  13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146,

14  1149 (9th Cir. 2000).

15              Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal

16  habeas corpus relief:

17

18
19
20
21
22
23
24
25
26

---

[1]  After the judgment of conviction was affirmed on appeal, petitioner filed a Petition for Review in the California Supreme Court on May 22, 2008.  (Resp't's Lod. Doc. 5.)  That Petition for Review was summarily denied on June 25, 2008.  (Id.)  On September 11, 2008, petitioner filed his original federal habeas application with this court.  (Doc. No. 1.)  On November 9, 2009, this court granted petitioner's motion for stay and abeyance, allowing him to return to state court to exhaust his ineffective assistance of counsel and cruel and unusual punishment claims. (Doc. Nos. 20, 24.)  In retrospect, it appears that in fact the California Court of Appeal had considered a rejected petitioner's cruel and unusual punishment claim in affirming his conviction on appeal.  (Opinion at 13) ("Coles and Cathey each contend their Three strikes sentences violated federal and state constitutional prescriptions against cruel and/or unusual punishment."). In any event, on March 15, 2010, petitioner filed a habeas petition with the California Supreme Court presenting his unexhausted claims and on October 13, 2010, the California Supreme Court summarily denied that petition.  (Resp't's Lod. Doc. 9.)  On November 18, 2010, petitioner filed his amended petition containing both his previously exhausted and recently exhausted claims with this court.  (Doc. No. 41.)  Thus, the only reasoned decision issued by the state courts with respect to any of petitioner's claims is the decision on appeal by the California Court of Appeal for the Third Appellate District.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on

the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

4

1   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

2   application must also be unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v.

3   Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal

4   habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

5   the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

6   precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

7   the state court's decision."  Harrington v. Richter, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011)

8   (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

9   obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

10  ruling on the claim being presented in federal court was so lacking in justification that there was

11  an error well understood and comprehended in existing law beyond any possibility for fairminded

12  disagreement."  Harrington,131 S. Ct. at 786-87.

13          If the state court's decision does not meet the criteria set forth in § 2254(d), a

14  reviewing court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v.

15  Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th

16  Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because

17  of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

18  considering de novo the constitutional issues raised.").

19          The court looks to the last reasoned state court decision as the basis for the state

20  court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

21  2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

22  from a previous state court decision, this court may consider both decisions to ascertain the

23  reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

24  banc).  "When a federal claim has been presented to a state court and the state court has denied

25  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

26  of any indication or state-law procedural principles to the contrary."  Harrington, 131 S. Ct. at

784-85.  This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  Harrington, 131 S. Ct. at 784.

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II.  Petitioner's Claims

**A. Alleged Violation of the Rights to Confrontation, Due Process and a Fair Trial**

As noted above, petitioner claims that his Sixth Amendment right to confrontation and his right to due process and a fair trial under the Fourteenth Amendment were violated. (Doc. No. 41 at 7-14.)  In this regard, petitioner argues that the trial court erred by allowing Deputy Sotelo to testify as to what he had been told a citizen who alerted police that a black man was running on a nearby street.  Petitioner contends that the admission of this hearsay testimony deprived him of his right to confront his accuser.  The challenged trial testimony was as follows:

> [DEPUTY DISTRICT ATTORNEY] MACY: Who did the citizen
> go up to?

/////

DEPUTY SOTELO: They didn't go up to anybody.  They just stopped their car as they were driving west on Klamath River.

MS. MACY: Okay.  Did the person, the citizen contact you?

DEPUTY SOTELO: Yes

MS. MACY: They basically told me that --

MR. SARIA: Objection. Hearsay.

MS. MACY: It's not offered for the truth , your honor --

MR. SARIA: 352.

MS. MACY: -- it's to indicate the conduct that happened next.

MR. SARIA: Relevance.  May we approach?

THE COURT: Yes.
(Unreported sidebar.)

THE COURT: The objection would be overruled.

MS. MACY: What did the citizen relate to you?

DEPUTY SOTELO: They told me that they had seen a black male running westbound on Clicker [sic] River Court, which would be the street directly to the north of where we were at.

(Reporter's Transcript on Appeal (RT) at 120-21.)

The California Court of Appeal for the Third Appellate District concluded that Deputy Sotelo's testimony did not constitute inadmissible hearsay, but that it was irrelevant and should not have been admitted into evidence.  (Opinion at 5.)  The state appellate court concluded, however, that the error was harmless and did not require reversal.  (Opinion at 5-6.) In this regard the court reasoned:

Coles contends he was denied his rights to confrontation, due process, and a fair trial when, over his objection, the trial court allowed Deputy Sotelo to testify that a witness said he saw a Black man running on a nearby street.  We agree the testimony should not have been allowed, but conclude the error was harmless.

Specifically, Sotelo testified that while he and Deputy Cress were detaining Cathey outside of Schemel's residence, a person drove up and contacted them.  When Sotelo began to testify to the

7

person's statements, defense counsel objected on the grounds of hearsay, relevance, and Evidence Code section 352, which states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

The People argued the anticipated testimony was not hearsay since it was being offered "to indicate the conduct that happened next," namely, why Deputy Canfield drove off in search of the Black man.

Without stating any basis for its determination, the court overruled the objection.  Sotelo then testified the person said he saw a Black man running on the street north of the deputies.

Coles contends the court's ruling was error because even if the person's statement was not hearsay, it was not relevant to any issue in the case.

The statement was not hearsay because it was not offered for the truth of the matter asserted (that a Black man was seen running a block north of Schemel's residence); instead, it was offered for the purpose of showing why Deputy Canfield was searching for the suspect.  (See People v. Scalzi (1981) 126 Cal. App.3d 901, 907 [where declarant's statement imparting information is not offered for truth of the information but to show the hearer's subsequent actions were in conformity with the information, the declarant's statement is not hearsay].)

However, to be admissible the statement had to be relevant to an issue in the case.  (Evid. Code, § 350 ["No evidence is admissible except relevant evidence"]; Evid. Code, § 210 ["'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].)

The reason why Deputy Canfield went in search of the suspect was neither disputed nor necessary to a determination of any issue in the case.  Thus, the person's statement was not relevant and should not have been allowed in evidence. Nevertheless, it was harmless because the same evidence was introduced by Canfield's undisputed testimony that, while searching the area for a suspect described as a Black man wearing a light-colored shirt, he saw Coles (a Black male wearing a light-colored shirt) round a corner, look at Canfield, and start running.  Canfield then described the stop of and the struggle with Coles, and Canfield's observance of the butterfly knife and the firearm.

/////

8

> Because Canfield's legally admissible testimony covered the same information as that given by the witness who contacted Sotelo at the scene, defendant was not prejudiced by Sotelo's testimony about the witness's statement.  Thus, reversal is not required.

(Opinion at 4-6.)

In seeking federal habeas relief petitioner argues that "[e]ven if [Deputy Sotelo's] statement[s] are classified as nonhearsay, they are sufficiently prejudicial that the jury would be unable to consider them only for limited purposes and would consider them for their truth in violation of the Confrontation Clause." (Doc. No. 41 at 7.)  Petitioner contends that Deputy Sotelo's testimony "was extremely prejudicial because there was no evidence introduced that petitioner was seen running away.  Observing petitioner is one thing, seeing him run-away is quite another." (Id. at 9.)  Petitioner also argues that he was prejudiced because Deputy Sotelo's improper testimony indicated that petitioner was seen running away from the crime scene, thereby connecting him to the burglary, when in fact he may have been "innocuously being in proximity at a particular location." (Id. at 11.)  Petitioner speculates that, "we do not know if the Blackman [sic] identified was running from something (scared), jogging or even if the Blackman [sic] was even petitioner" and complains that "no cross-examination was possible.  (Id.) Petitioner concludes, "the crux of the case was identity and because petitioner happened to be at the location the non-testifying witness preferred to law enforcement personnel, he became the "burglar," simply because he was a Black male." (Id. at 13.)

The court will turn first to plaintiff's claim that his confrontation rights were violated.  The Sixth Amendment grants a criminal defendant the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The United States Supreme Court has held that the Confrontation Clause bars the state from introducing into evidence out-of-court statements which are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable.  Crawford v. Washington, 541 U.S. 36, 53-54 (2004); see also Bullcoming v. New

9

1    Mexico,___U. S. ___, 131 S. Ct. 2705, 2706-07 (2011); Ocampo v. Vail, 649 F.3d 1098, 1107

2    (9th Cir. 2011). "Under Crawford . . . the Confrontation Clause has no application to [an out-of

3    court nontestimonial statement] and therefore permits their admission even if they lack indicia of

4    reliability." Whorton v. Bockting, 549 U.S. 406, 420 (2007). See also Ponce v. Felker, 606 F.3d

5    596, 600 n. 2 (9th Cir. 2010) ("[T]he Confrontation Clause does not apply to non-testimonial

6    statements.") United States v. Sine, 493 F.3d 1021, 1035 n.11 (9th Cir. 2007) ("Only testimonial

7    out-of-court statements raise Confrontation Clause concerns.")

8              In rejecting somewhat similar Confrontation Clause and Due Process challenges

9    in the context of an appeal from a federal murder conviction, the Ninth Circuit has observed:

10                 The Confrontation Clause does not apply to non-hearsay,
            that is, it "does not bar the use of testimonial statements for
11          purposes other than establishing the truth of the matter asserted,"
            nor does it apply to hearsay by a declarant who appears for cross-
12          examination at trial. Crawford, 541 U.S. at 59 n. 9, 124 S. Ct.
            1354 (citing Tennessee v. Street, 471 U.S. 409, 414, 105 S. Ct.
13          2078, 85 L. Ed.2d 425 (1985) and California v. Green, 399 U.S.
            149, 162, 90 S. Ct. 1930, 26 L. Ed.2d 489 (1970)). Statements
14          made in the course of police interrogation are nontestimonial when
            made "under circumstances objectively indicating that the primary
15          purpose of the interrogation is to enable police assistance to meet
            an ongoing emergency," but are testimonial when "circumstances
16          objectively indicate that there is no such ongoing emergency, and
            that the primary purpose of the interrogation is to establish or
17          prove past events potentially relevant to later criminal
            prosecution." Davis v. Washington, 547 U.S. 813, 126 S. Ct.
18          2266, 2273–74, 165 L. Ed.2d 224 (2006).

19                 No plain error appears. Testimony by a patrol officer about
            information an eyewitnesses gave her about the car parked at the
20          Trading Post was offered as a basis for action, not for its truth.
            Even if the tip that Slim's vehicle had been in an area near
21          Mitchell's grandfather's house were hearsay, nothing came of it
            and there was other, direct testimony to similar effect.
22

23   United States v. Mitchell, 502 F.3d 931, 966 (9th Cir. 2007).

24             To establish that he was denied his constitutional right to confrontation, petitioner

25   must show that Deputy Sotelo's challenged testimony was improperly admitted at trial, that the

26   witness's statement to Deputy Sotelo falls under the Crawford rule, and that the witness's

                                            10

1    statement had a substantial and injurious influence in determining the jury's verdict against

2    petitioner.  Petitioner has not done so.

3            First, as noted above, Crawford applies only to cases where the statement in

4    question is testimonial.  In Davis v. Washington, 547 U.S. 813, 826-830 (2006), the United

5    States Supreme Court held that statements are non-testimonial (and therefore not subject to the

6    requirements set forth in Crawford) "when made in the course of police interrogation under

7    circumstances objectively indicating that the primary purpose of the interrogation is to enable

8    police assistance to meet an ongoing emergency."  Id. at 822.  Statements are testimonial "when

9    the circumstances objectively indicate that there is no such ongoing emergency, and that the

10   primary purpose of the interrogation is to establish or prove past events potentially relevant to

11   later criminal prosecution."  Id.  In this case the civilian's statement was not made in the course

12   of a police interrogation, nor did Deputy Sotelo seek the citizen out in an investigative capacity

13   with an eye toward a criminal prosecution.  Instead, the citizen-witness on his own accord

14   stopped police to provide them assistance at the scene of a robbery where police had not yet

15   apprehended all of the suspects.  See Michigan v. Bryant, ___U.S.___,___, 131 S. Ct. 1143, 1155

16   (2011) (Where "the primary purpose of an interrogation is to respond to an 'ongoing emergency,'

17   its purpose is not to create a record for trial and thus is not within the scope of the

18   [Confrontation] Clause."); United States v. Solorio, ___F.3d___,___, 2012 WL 161843, at *8 (9th

19   Cir. Jan. 19, 2012) (statements by non-testifying DEA agents reflecting their present sense

20   impressions at the scene of a "buy bust" operation were non-testimonial); Mitchell, 502 F.3d at

21   966.

22           Second, the California Court of Appeals properly determined that the witness's

23   statement to Deputy Sotelo was not hearsay because it was not offered for the truth of the matter

24   asserted (that a Black man was seen running on a nearby street), but instead for the purpose of

25   showing why police were searching for the suspect.  (Opinion at 5.)  The Confrontation Clause

26   /////

11

1    does not apply to non-hearsay such as this. <u>United States v. Inadi</u>, 475 U.S. 387, 398 n. 11(1986)

2    <u>Mitchell</u>, 502 F.3d at 966.

3                    Finally, a Confrontation Clause claim is subject to harmless error analysis.

4    <u>Ocampo v. Vail</u>, 649 F.3d 1098, 1114 (9th Cir. 2011); <u>United States v. Bowman</u>, 215 F.3d 951,

5    961 (9th Cir. 2000).  "In the context of habeas petitions, the standard of review is whether a

6    given error 'had substantial and injurious effect or influence in determining the jury's verdict.'"

7    <u>Christian v. Rhode</u>, 41 F.3d 461, 468 (9th Cir. 1994) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S.

8    619, 637 (1993)).  <u>See also</u> <u>Ocampo</u>, 649 F.3d at 1114; <u>Whelchel v. Washington</u>, 232 F.3d 1197,

9    1205 -1206 (9th Cir. 2000).  Here, even if the witness's statement was testimonial hearsay and

10   was erroneously admitted by the trial court, for the reasons explained by the state appellate court

11   any <u>Crawford</u> error was harmless in this case.  As the California Court of Appeal observed, the

12   challenged testimony cannot be said to have impacted the outcome of petitioner's trial.  This is

13   because Deputy Canfield covered the same information in his properly-admitted testimony when

14   he testified as follows:

15                   I was looking for a black male adult, possibly wearing a light-
                     colored shirt.
16
                                                 * * *
17
                     "As I just passed Kellogg Way, I observed a black male adult on
18                   this side of the roadway wearing a light-colored shirt.  As the
                     subject saw me driving - - or riding, and approaching him, he
19                   began to run across the street.  I was probably a good 50 to 60 feet
                     away..."
20
                                                 * * *
21
                     When he first came around the corner, my first observation of him
22                   was he stopped, looked at me and then began to run.

23   (RT at 153.)  Because Deputy Sotelo's testimony was merely cumulative of the testimony of

24   Deputy Canfield, its admission into evidence at petitioner's trial could not have had an injurious

25   effect or influence in determining the jury's verdict.

26   /////

                                                    12

1        For all of these reasons, the California Court of Appeal's decision rejecting

2   petitioner's Confrontation Clause claim was not contrary to or an unreasonable application of

3   federal law.  Therefore, petitioner is not entitled to federal habeas relief with respect to the claim

4   that his rights under Confrontation Clause were violated.

5        As noted above, petitioner also argues that the admission of the challenged

6   testimony violated his rights to due process of law and a fair trial.  However, a state court's

7   evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law,

8   either by infringing upon a specific federal constitutional or statutory provision or by depriving

9   the defendant of the fundamentally fair trial guaranteed by due process.  See Pulley v. Harris, 465

10  U.S. 37, 41 (1984); Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000) ("The improper

11  admission of evidence does not violate the Due Process Clause unless it is clearly prejudicial and

12  'rendered the trial fundamentally unfair.'") (citation omitted); Spivey v. Rocha, 194 F.3d 971,

13  977 (9th Cir. 1999) ("A federal habeas court cannot review questions of state evidence law.");

14  Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).  Accordingly, a federal court

15  cannot disturb a state court's decision to admit evidence on due process grounds unless the

16  admission of the evidence was "arbitrary or so prejudicial that it rendered the trial fundamentally

17  unfair."  Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).  See also Larson v. Palmateer,

18  515 F.3d 1057, 1066 (9th Cir. 2008); Drayden, 232 F.3d at 710; Colley v. Sumner, 784 F.2d 984,

19  990 (9th Cir. 1986).  In addition, in order to obtain habeas relief on the basis of evidentiary error,

20  petitioner must show that the error was one of constitutional dimension and that it was not

21  harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993).  Thus, in order to grant relief, the

22  habeas court must find that the error had "'a substantial and injurious effect' on the verdict."

23  Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting Brecht, 507 U.S. at 623).

24       The undersigned has already concluded above that there was no Confrontation

25  Clause error in the admission of the non-testimonial statement by the citizen witness to Deputy

26  Sotelo.  Moreover, although the California Court of Appeal found that the irrelevant statement

13

1   was erroneously admitted through Deputy Sotelo's testimony its admission was not arbitrary or

2   so prejudicial so as to render petitioner's trial fundamentally unfair.  Rather, as the state appellate

3   court correctly pointed out, the evidentiary error was harmless because the jury heard the same

4   information through the properly-admitted testimony of Deputy Canfield.  Therefore, the

5   challenged evidence was merely cumulative.  Because there was no constitutional error,

6   petitioner is not entitled to federal habeas relief with respect to his claim that his rights to Due

7   Process and a fair trial were violated by the admission of the witness's statement to Deputy

8   Sotelo.

9                    **B.  Ineffective Assistance of Counsel**

10                  Petitioner's next claim is that he received ineffective assistance of counsel in

11  connection with his sentencing proceedings in violation of his rights under the Sixth

12  Amendment.  (Doc. No. 41 at 16-20.)  The background to this claim is as follows.

13                  Prior to sentencing, petitioner's trial counsel filed a motion pursuant to People v.

14  Superior Court (Romero), 13 Cal.4th 497 (1996), requesting that the trial court exercise its

15  discretion to strike one of petitioner's prior convictions and sentence him to a determinate

16  sentence.[3]  (Clerk's Transcript on Appeal (CT) at 14-17.)  Petitioner's trial counsel vigorously

17  argued this motion at the sentencing hearing .  (RT at 375-77.)  Petitioner's counsel contended

18  that co-defendant Cathey was the more culpable participant in the crime, and that "the case

19  against [petitioner], related to burglary, is one of vicarious liability and one as sort of a secondary

20  actor in this whole thing."  (Id. at 375-76.)  Counsel also argued that a sentence of twenty-five

21  years to life in state prison was disproportionate in light of petitioner's lesser culpability.  (Id. at

22  377.)  Counsel specifically requested that the sentencing court "exercise its discretion and strike a

23  strike and sentence [petitioner] to a lengthy determinate sentence."  (Id.)

24  _____

25          [3]  In that case the California Supreme Court held that in cases charged under California's
    Three Strikes Law, a sentencing court on its own motion has the discretion to strike prior felony
26  allegations in the furtherance of justice.  People v. Superior Court (Romero), 13 Cal.4th 497,
    529-30 (1996)

                                            14

1    The trial judge then inquired what petitioner's sentence would be if one of

2   petitioner's prior convictions was stricken.  (Id. at 378.)  Petitioner's counsel answered that

3   petitioner would receive the upper term of twenty-two years in state prison.  (Id.)  After further

4   argument, petitioner's counsel again asked the sentencing court to "take into account the relative

5   culpability of individuals when passing sentence."  (Id. at 381.)

6    The following colloquy then took place:

7    THE COURT:  My personal feeling is that the – in my opinion, the
     law in this case, which basically the legislature stated that each one
8    of these residential burglaries becomes a strike and, therefore, the
     minimum is 25 to life on the third strike.  It is a harsh sentence in
9    these conditions.  And basically, there being no, as the parties say,
     physical violence – although I do think there is a violence to the
10   home, and the legislature saw fit to count these as a strike.  I do
     think it's a rather harsh sentence.

11
     What I would like to do is impose a sentence that everybody could
12   agree upon, in that all the appeals would be waived and we go
     down the road.  I don't know that [sic] that's possible.
13   I don't know, do counsel want to talk about that?

14   MR. SARIA (petitioner's counsel):  I don't think the prosecution
     has the authority, I mean, to bind the Attorney General's Office.
15
     THE COURT:  Right.  I would doubt that, too.
16
     In that the legislature has imposed this as a three strike case, I am
17   going to basically follow the recommendations of Probation, with
     some exception.
18

19   (Id.)

20    Thereafter, the court sentenced petitioner to an aggregate term thirty-five years to

21   life in state prison.  (Id. at 387.)  Just prior to pronouncing that sentence, the trial judge stated:

22   "It's the intent of this Court to give the defendant 25 to life, which I think is the minimum I can

23   do without striking a strike, plus the – I believe I have to give consecutive time on the two 5-year

24   priors, so that would be consecutive to the 25 to life."  (Id.)

25    Petitioner argues that his counsel's in response to the sentencing judge's

26   suggestion of the possibility of an agreed upon lesser sentence with an appeal waiver reflected a

15

1  failure to act as a conscientious advocate which constituted ineffective assistance.  (Doc. No. 41

2  at 17.)  On this point, petitioner argues, "[a]s the record reflects counsel lodged an antecedent

3  Romero motion, seeking a lesser sentence for his client, argued at sentencing why a lesser

4  sentence should be imposed, then with the Court's acquiescence, counsel not only did not proffer

5  alternative sentencing option[s], he told the Court why it cannot be done." (Id. at 19.)  Petitioner

6  contends that he would have in fact received a lesser sentence if his trial counsel had not told the

7  sentencing judge that the prosecution lacked the authority to bind the Attorney General's Office

8  by entering an appeal waiver.  (Id.)

9        Petitioner raised this claim of ineffective assistance of counsel for the first time in

10  an exhaustion petition he filed in the California Supreme Court on March 15, 2010.  (Resp't's

11  Lod. Doc. 9.)  That petition was summarily denied.  (Id.)  Under these circumstances, this court

12  must independently review the record to determine whether federal habeas corpus relief is

13  available under § 2254(d).  Himes, 336 F.3d at 853.  However, it remains petitioner's burden to

14  demonstrate that "there was no reasonable basis for the state court to deny relief."  Harrington,

15  131 S. Ct. at 784.

16        The Sixth Amendment guarantees the effective assistance of counsel.  The United

17  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

18  Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

19  counsel, a petitioner must first show that, considering all the circumstances, counsel's

20  performance fell below an objective standard of reasonableness.  Strickland, 466 U.S. at  687-88.

21  After a petitioner identifies the acts or omissions that are alleged not to have been the result of

22  reasonable professional judgment, the court must determine whether, in light of all of the

23  circumstances, the identified acts or omissions were outside the wide range of professionally

24  competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  In assessing an

25  ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's

26  performance falls within the 'wide range of professional assistance.'"  Kimmelman v. Morrison,

16

477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There is in addition a strong

presumption that counsel "exercised acceptable professional judgment in all significant decisions

made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

There is, of course, no obligation to raise meritless arguments on a client's behalf.  See

Strickland, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as

prejudice).  Thus, counsel is not deficient for failing to raise a weak issue.  See Miller v. Keeney,

882 F.2d 1428, 1434 (9th Cir. 1989).

       Second, a petitioner must establish that he was prejudiced by counsel's deficient

performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine

confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's

performance was deficient before examining the prejudice suffered by the defendant as a result of

the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949,

955 (9th Cir. 2002), amended, 385 F.3d 1247 (9th Cir. 2004) (quoting Strickland, 466 U.S. at

697).[4]

---

    [4]  On appeal, co-defendant Cathey claimed that his counsel also rendered ineffective
assistance by failing to object when petitioner's counsel suggested that the prosecutor lacked the
authority to bind the Attorney General's Office to a plea agreement with an appeal waiver.  The
California Court of Appeal rejected that argument, reasoning, in part, as follows:

        After denying Coles's and Cathey's motions to strike their
        respective prior serious felony convictions, the court noted that
        sentences of 25 years to life was "harsh" because "basically, there
        [was] no . . . physical violence" committed during the current
        offenses (overlooking Coles's struggle with Deputy Canfield and
        attempt to grab the deputy's weapon).  The court then asked if the
        parties would "want to talk about that" to see if they could agree on
        a less severe sentence.  When Coles's counsel questioned whether
        the prosecutor had any authority to enter into such an agreement,

1    Petitioner has failed to show that his trial counsel's conduct fell below the

2 objective standard of reasonableness.  At the outset, it is not altogether clear what petitioner's

3 trial counsel meant when he suggested to the sentencing judge that it was doubtful that the

4 prosecutor had the authority to bind the Attorney General's Office by entering the suggested

5 agreement.  The state appellate court took counsel's comment as questioning whether the Deputy

6 District Attorney could agree to a sentence outside the confines of California's Three Strikes

7 Law.  The undersigned, on the other hand, interprets the remark as questioning whether if the

8

9        the court replied: "Right.  I would doubt that, too" "[i]n that the
10       legislature has imposed this as a three strike case . . . ."  Cathey's
         counsel said nothing during this exchange, and the court then
11       proceeded to sentence the defendants in accordance with the Three
         Strikes law.

12
         Cathey argues his counsel's silence and failure to act in response to
13       what he describes as the trial court's "offer to impose an agreed
         upon lesser sentence" constituted ineffective assistance of counsel.
14       The contention fails.

15                                  * * *

16       "'[T]he Three Strikes initiative, as well as the legislative act
         embodying its terms, was intended to restrict courts' discretion in
17       sentencing repeat offenders.' [Citation.]  To achieve this end, 'the
         Three Strikes law does not offer a discretionary sentencing choice,
18       as do other sentencing laws, but establishes a sentencing
         requirement to be applied in every case where the defendant has at
19       least one qualifying strike, unless the sentencing court "conclud[es]
         that an exception to the scheme should be made because, for
20       articulable reasons which can withstand scrutiny for abuse, this
         defendant should be treated as though he actually fell outside the
21       Three Strikes scheme."'  [Citation.]" (citation omitted.)

22       Having found that Cathey did not fall outside the Three Strikes
         scheme, the trial court had no choice but impose the sentences
23       required by the Three Strikes law.  That Cathey's trial attorney did
         not argue otherwise was not ineffective assistance of counsel.
24       (People v. Constancio (1974) 42 Cal. App.3d 533, 546 ["It is not
         incumbent upon trial counsel to advance meritless arguments or to
25       undertake useless procedural challenges merely to create a record
         impregnable to assault for claimed inadequacy of counsel"].)

26 (Opinion at 12-13.)

                                   18

1   Deputy District Attorney agreed to such a sentence he could bind the Attorney General's Office

2   by waiving any appeal of what would amount to an unlawful sentence.

3          In any event, to the extent petitioner's counsel was suggesting to the sentencing

4   judge that he did not have authority to impose a sentence outside of the Three Strikes framework,

5   his statement does not reflect ineffective assistance.  Although the sentencing judge mentioned

6   the possibility of imposing a lesser sentence, the issue of whether California law called for

7   imposition of Three Strike sentence was not debatable as far as the court was concerned.  (RT at

8   381).  It is undisputed that petitioner's counsel filed a <u>Romero</u> motion urging the sentencing

9   judge to exercise his discretion to strike one petitioner's strikes and impose upon him a lesser

10  sentence and argued in support of that motion.  After hearing those arguments the sentencing

11  judge determined that, although the resulting sentence was a harsh one, under California law

12  neither of petitioner's two prior strikes should be stricken.  (<u>Id.</u> at 380-81).  After making that

13  determination, the sentencing judge initiated a dialogue with petitioner's counsel concerning the

14  possibility of nonetheless imposing a lesser penalty.  (<u>Id.</u>)  Ultimately, the sentencing judge

15  concluded that the Three Strikes sentence, although harsh, was called for under the law.  (<u>Id.</u>)[5]

16  Any additional argument that petitioner's counsel could have made would have been weak at best

17  and counsel's failure to offer a weak argument cannot render his performance deficient.  <u>See</u>

18  <u>Strickland</u>, 466 U.S. at 687-88; <u>Miller</u>, 882 F.2d at 1434.

19         Finally, even if counsel's performance could be found to be deficient in some

20  way, petitioner has not established prejudice.  There is no indication in the record that any

21  statement made by his counsel at the sentencing hearing changed the length of petitioner's

22  sentence.  As noted above, counsel moved to strike one of petitioner's strikes and argued for a

23

24         [5]  As noted by the state appellate court in its decision affirming the co-defendant Cathey's
25  judgment and sentence on appeal, "having found that Cathey did not fall outside the Three
    Strikes scheme, the trial court had no choice but impose the sentences required by the Three
26  Strikes law."  (Opinion at 12.)  Although petitioner did not raise this issue on appeal but did so
    only in his exhaustion petition that was summarily denied, the same reasoning applies.

1  lesser sentence.  Ultimately, it was the exclusive duty of the court to determine the appropriate

2  sentence.  While the sentencing judge discussed the possible option of a lesser sentence, he

3  ultimately rejected it.  Petitioner's claim that there is a reasonable probability that he would have

4  received a lesser sentence had his counsel performed differently is speculative at best.[6]

5          For these reasons, petitioner is not entitled to federal habeas relief with respect to

6  his ineffective assistance of counsel claim.

7                          **C.  Cruel and Unusual Punishment**

8          Lastly, petitioner contends that his aggregate sentence of thirty-five years to life in

9  state prison, imposed pursuant to California's Three Strikes Law with enhancements, constitutes

10  cruel and unusual punishment.  (Doc. No. 41 at 22-27.)  Petitioner did in fact raise this issue in his

11  direct appeal.[7]  The California Court of Appeals rejected his argument on the merits, finding that

12  the challenged sentence did not violate the Eighth Amendment.  The state appellate court

13  reasoned as follows:

> Coles and Cathey each contend their Three Strike sentences violated
> federal and state constitutional proscriptions against cruel and/or
> unusual punishment.  We disagree.
>
> The Eighth Amendment proscription against cruel and unusual
> punishment contains a narrow disproportionality principle which
> prohibits imposition of a sentence grossly disproportional to the
> severity of the crime.  (*People v. Meeks* (2004) 123 Cal. App.4th
> 695, 707.)  A proportionality analysis requires comparison of (1) the
> gravity of the offense committed and the harshness of the penalty,
> (2) the sentences imposed on others for the same crime in the same
> jurisdiction, and (3) the sentences imposed for the same crime in
> other jurisdictions.  (*Ibid.*)  Analyzing the gravity of the crime
> includes consideration of both the offense and the defendant's
> criminal history. ( *Id.* at p. 708.)
>
> "[I]t is only in the rare case where a comparison of the crime
> committed and the sentence imposed leads to an inference of gross

---

[6]  The undersigned notes that there is absolutely no suggestion in the record that the
Deputy District Attorney was considering entering into the type of possible sentencing agreement
about which the sentencing court had inquired.

[7]  See fn. 1, above.

1
2
3

disproportionality that the second and third criteria come into play."
( *People v. Meeks, supra*, 123 Cal. App.4th at p. 707.)  Coles and
Cathey have not shown that their circumstances constitute a "rare
case."

4
5
6

Coles's crimes committed in August 2006 were residential burglary,
receiving stolen property, being a convicted felon in possession of a
firearm, illegally possessing a butterfly knife and a firearm, and
deterring an officer in the performance of his duties.  He was on
parole when he committed those crimes.  His two prior serious
felony convictions were for residential burglaries in 2000 and 2001.

7
8
9
10
11
12
13
14

In Coles's view, his offenses "do[ ] not warrant a sentence that
would keep [him] in prison for almost 30 years at a minimum."
Addressing only his latest conviction for burglary, he points out that
"there was no violent encounter with a homeowner and property
loss was minimal."  But residential burglary is a crime so fraught
with potential violence that "[o]ur Supreme Court has characterized
[it] as '. . . so dangerous' as to call for enhanced punishment."
(*People v. Estrada* (1997) 57 Cal. App.4th 1270, 1281, citing
*People v. Jackson* (1985) 37 Cal.3d 826, 832.) That Coles was
armed with a loaded gun and a butterfly knife when he committed
the burglary indicates his willingness to use deadly force if he
encountered someone at the residence.  Moreover, when he was
caught by Deputy Canfield, Coles unsuccessfully tried to grab
Canfield's weapon and, while they struggled, Cole repeatedly tried
to get something out of his pocket, undoubtedly either the knife or
the gun, again showing his willingness to resort to violence.

15
16
17
18
19

In a word, Coles's crimes were "serious," justifying a serious
penalty, particularly in light of his recidivism.  Coles points out that
his two prior serious felony convictions were the "minimal number"
necessary for Three Strikes sentencing.  However, that is not a
mitigating circumstance.  Given the nature of his crimes and his
recidivism, Coles has failed to show that his sentence was grossly
disproportionate.  Thus, an intrastate or interstate comparison of
offenses is not required.

20
21
22
23

As to the California Constitution's prohibition against cruel or
unusual punishment, which also requires a showing of gross
disproportionality (*In re Lynch* (1972) 8 Cal.3d 410, 424), Coles
asks us to apply his Eighth Amendment analysis.  We have, and for
the same reasons that we rejected his claim based on the federal
Constitution, we reject his claim based on California's Constitution.

24

(Opinion at 13-15.)

25

The United States Supreme Court has held that the Eighth Amendment includes a

26

"narrow proportionality principle" that applies to terms of imprisonment.  See Harmelin v.

21

1   Michigan, 501 U.S. 957, 996 (1991) (Kennedy, J., concurring).  See also Taylor v. Lewis, 460

2   F.3d 1093, 1097 (9th Cir. 2006).  However, successful challenges in federal court to the

3   proportionality of particular sentences are "exceedingly rare."  Solem v. Helm, 463 U.S. 277, 289-

4   90 (1983).  See also Ramirez v. Castro, 365 F.3d 755, 775 (9th Cir. 2004).  "The Eighth

5   Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids

6   only extreme sentences that are 'grossly disproportionate' to the crime."  Harmelin, 501 U.S. at

7   1001 (Kennedy, J., concurring) (citing Solem v. Helm, 463 U.S. at 288, 303).  Thus, in Lockyer v.

8   Andrade, the United States Supreme Court held that it was not an unreasonable application of

9   clearly established federal law for the California Court of Appeal to affirm a "Three Strikes"

10  sentence of two consecutive 25 year-to-life terms of imprisonment for a petty theft with a prior

11  conviction involving theft of $150.00 worth of videotapes.  Andrade, 538 U.S. at 75.  Similarly,

12  the Supreme Court has held that a "Three Strikes" sentence of 25 years-to-life in prison imposed

13  pursuant to a grand theft conviction involving the theft of three golf clubs from a pro shop was not

14  grossly disproportionate and did not violate the Eighth Amendment.  Ewing v. California, 538

15  U.S. 11, 29 (2003).

16          The undersigned finds that the sentence challenged by petitioner does not fall

17  within the type of "exceedingly rare" circumstances that would support a finding that his sentence

18  violates the Eighth Amendment.  The sentence imposed in petitioner's case was certainly a

19  significant penalty.  However, as noted by the California Court of Appeal, petitioner's  possession

20  of a switch-blade knife and a loaded firearm during the residential burglary he committed

21  involved a high degree of danger to other persons.  Moreover, petitioner had suffered two prior

22  serious felony convictions for residential burglary.  As discussed above, in Andrade and Ewing

23  the United States Supreme Court upheld the same or even more severe sentences for far less

24  serious crimes than those of which petitioner was convicted.  See Harmelin, 501 U.S. at 996 (life

25  without possibility of parole for possessing a large quantity of cocaine not cruel and unusual);

26  Rummel, 445 U.S. at 282 (life with the possibility of parole for obtaining money by false

22

1  pretenses, the defendant's third nonviolent felony, found not to constitute cruel and unusual

2  punishment).[8]

3          The state appellate court's rejection of petitioner's Eighth Amendment challenge

4  to his sentence was not contrary to or an unreasonable application of federal law.[9]  Accordingly,

5  petitioner is not entitled to federal habeas relief with respect to his claim that his sentence violated

6  the Eighth Amendment's prohibition of cruel and unusual punishment.

7                                          CONCLUSION

8          For the reasons set forth above, IT IS HEREBY RECOMMENDED that

9  petitioner's application for a writ of habeas corpus be denied.

10          These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

12  one days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within fourteen days after service of the objections.  Failure to file

16  objections within the specified time may waive the right to appeal the District Court's order.

17  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

18  1991).  In his objections petitioner may address whether a certificate of appealability should issue

19  _____

20          [8]  In light of the decisions of the U.S. Supreme Court discussed above, it cannot be said
    that the sentence imposed in petitioner's case was grossly disproportionate to his crimes of

21  conviction.  Because petitioner has not raised an inference of gross disproportionality, this court
    need not compare his sentence to those of other defendants in other jurisdictions.  See Taylor v.

22  Lewis, 460 F.3d 1093, 1101 (9th Cir. 2006) ("Because Taylor raises no inference of gross
    disproportionality, we need go no further.")

23          [9]  Even if petitioner had presented his Eighth Amendment challenge to his sentence only

24  in his exhaustion habeas petition which was summarily denied by the California Supreme Court,
    he would still not be entitled to federal habeas relief.  This is so because an independent review

25  of the record dictates the same conclusion.  See Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir.
    2011); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Moreover, petitioner has not

26  met his burden of "showing there was no reasonable basis for the state court to deny relief" with
    respect to this claim.  Harrington v. Richter, 562 U.S.___, ___,131 S. Ct. 770, 784 (2011).

1   in the event he files an appeal of the judgment in this case. <u>See</u> Rule 11, Federal Rules Governing

2   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

3   enters a final order adverse to the applicant).

4   DATED: February 13, 2012.

 

 

                                 DALE A. DROZD

                                 UNITED STATES MAGISTRATE JUDGE

DAD:ac:
coles2134.hc